FILED

2020 FEB 27  AM 9: 28

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

BY: _____

PAID

FEB 27 2020

Clerk, US District Court
COURT 4612

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Jennifer Erin Loew,

        Plaintiff,

    vs.

LOS ANGELES COUNTY METROPOLITAN
TRANSPORTATION AUTHORITY, a municipal
corporation, LOS ANGELES COUNTY METROPOLITAN
TRANSPORTATION AUTHORITY BOARD OF DIRECTORS,
a public body, PHILLIP A WASHINGTON, individually
and in his official capacity, ALEX WIGGINS, individually
and in his official capacity, JOANNE PETERSON,
individually and in her official capacity, MARY
WICKHAM, individually and in her official capacity,
EDUARDO MONTELONGO, individually and in his
official capacity, MARY REYNA individually and in her
official capacity, CHARLES SAFER, individually and in
his official capacity, CAMILLE GRANDVILLE
TOWNSEND, individually and in her official capacity,
HILDA L. SOLIS, individually and in her official capacity,
MARK RIDLEY-THOMAS individually and in his official
capacity, SHEILA KUEHL, individually and in her official
capacity, JANICE HAHN individually and in her official
capacity, KATHRYN BARGER individually and in her
official capacity, ASTON GREENE individually and in his
official capacity, LINDSAY MASON, individually and in
her official capacity, JONAURA WISDOM individually
and in her official capacity, KAREN GORMAN
individually and in her official capacity

        Defendant(s) jointly and severally

Case No.:

20CV01900-VAP-JEMx

HONORABLE:

COMPLAINT FOR DAMAGES, JURY
DEMAND, AND REQUEST FOR INJUNCTIVE
RELIEF

COMPLAINT FOR DAMAGES, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF

- 1

Jennifer Erin Loew, JD.
Plaintiff in Pro Per
21201 Kittridge Street, #2411
Woodland Hills, CA 91303
818-571-1059

# COMPLAINT FOR DAMAGES, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF

NOW COMES Plaintiff Jennifer Loew, and states for her complaint against Defendants Los Angeles County Metropolitan Transportation Authority, Los Angeles County Metropolitan Transportation Authority Board of Directors, Phillip A Washington,  Alex Wiggins, Joanne Peterson, Mary Wickham,  Eduardo Montelongo, Mary Reyna, Charles Safer, Camille Grandville Townsend, Hilda L. Solis, Mark Ridley-Thomas, Sheila Kuehl, Janice Hahn, Kathryn Barger, Aston Greene, Lindsay Mason, Jonaura Wisdom, Karen Gorman, (collectively, the "Defendants"):

## **PARTIES**

1.     Plaintiff Jennifer E Loew is an individual residing in the City of Los Angeles, County of Los Angeles, State of California.

2.      Defendant Los Angeles County Metropolitan Transportation Authority (LACMTA) is a general powers transportation agency organized under the laws of the State of California, a municipal corporation, and located in the City of Los Angeles, County of Los Angeles, State of California.

3      Defendant Los Angeles County Metropolitan Transportation Authority Board of Directors (MTA Board) is a local public body that controls, operates, administers and governs the LACMTA in the City of Los Angeles, County of Los Angeles, State of California.

4.      Defendant Phillip Washington, (Washington) is an individual and the Chief Executive Officer of LACMTA, and works in the City of Los Angeles, County of Los Angeles, State of California.

5.      Defendant Hilda L. Solis (Solis), Los Angeles County First District Supervisor and MTA Board Member, is an individual and Los Angeles County and LACMTA Counsel, and works in the City of Los Angeles, County of Los Angeles, State of California.

6.      Defendant Mark Ridley-Thomas (Ridley-Thomas), Los Angeles County Second District Supervisor and MTA Board Member, is an individual and Los Angeles County and LACMTA Board Member, and works in the City of Los Angeles, County of Los Angeles, State of California.

7.      Defendant Shelia Kuehl (Kuehl), Los Angeles County Third District Supervisor and MTA Board Member, is an individual and Los Angeles County and LACMTA Board Member, and works in the City of Los Angeles, County of Los Angeles, State of California

8.      Defendant Janice Hahn (Hahn), Los Angeles County Fourth District Supervisor and MTA Board Member, is an individual and Los Angeles County and LACMTA Board Member, and works in the City of Los Angeles, County of Los Angeles, State of California.

9.      Defendant Katherine Barger (Barger), Los Angeles County Fifth District Supervisor and MTA Board Member, is an individual and Los Angeles County and LACMTA Board Member, and works in the City of Los Angeles, County of Los Angeles, State of California.

10.      Defendant Stephanie Wiggins (Stephanie), is an individual and the MetroLink CEO, Metro Consultant, Former LAMTA Deputy CEO, and works in the City of Los Angeles, County of Los Angeles, State of California.

11.      Defendant Alex Wiggins (Wiggins), is an individual and Chief Executive Officer of the New Orleans Regional Transit Authority and Former METRO Chief of System Security and Law Enforcement, and works in the City of New Orleans, Parish of Orleans, State of Louisiana.

12.      Defendant Joanne Peterson (Peterson), is an individual and the LACMTA Chief of Human Capital, and works in the City of Los Angeles, County of Los Angeles, State of California.

13.      Defendant Jonaura Wisdom, (Wisdom) is an individual and the Metro Chief of Civil Rights of LACMTA, and works in the City of Los Angeles, County of Los Angeles, State of California

14.      Defendant Mary Reyna (Renya), is an individual and Los Angeles County and LACMTA

COMPLAINT FOR DAMAGES, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF

Counsel, and works in the City of Los Angeles, County of Los Angeles, State of California.

15.     Defendant Charles Safer (Safer), is an individual and Los Angeles County and LACMTA Counsel, and works in the City of Los Angeles, County of Los Angeles, State of California.

16.     Defendant Eduardo Montelongo (Montelongo), is an individual and Los Angeles County and LACMTA Counsel, and works in the City of Los Angeles, County of Los Angeles, State of California.

## JURSIDICTION AND VENUE

17.     This is an action for the deprivation of Ms. Loew's rights under the United States Constitution arising out of Ms. Loew's employment with LACMTA and the LACMTA BOARD, and seeks relief, including, monetary damages, under the 13th and 14th Amendments to the United States Constitution.

18.     This Court has federal question jurisdiction over Ms. Loew's claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4) and 42 U.S.C. § 1983.

19.     This Court has jurisdiction to grant injunctive and equitable relief, as well as monetary damages, pursuant to 29 U.S.C. § 626(c).

20.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the subject claims occurred in the judicial district of this Court.

21. Venue in this Court is also proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants' contacts in the judicial district of this Court are sufficient to subject Defendants to this Court's personal jurisdiction and, therefore, Defendants are deemed to reside in the judicial district of this Court pursuant to 28 U.S.C. §1931(c)(2).

COMPLAINT FOR DAMAGES, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF

**GENERAL ALLEGATIONS**

22.    Mrs. Loew is a thirty-seven (37) year old, Caucasian female; she is also a wife and mother of two(2) children.

23.    Mrs. Loew graduated in 2000, from Sherman Oaks Center for Enriched Studies (LAUSD).

24.    Mrs. Loew received her Bachelor of Arts Degree in Sociology (Magna Cum Laude) from the University of California Los Angeles (UCLA) in 2004.

25.    Mrs. Loew earned her Juris Doctorate from Penn State Dickenson Law School in 2009.

26.    Mrs. Loew began her employment with LACMTA and LACMTA BOARD as a Special Projects Manager in the Systems, Security and Law Enforcement Department of the LACMTA in September 2016.

27.    Since her above hire by LACMTA and LACMTA BOARD, Mrs. Loew served as a Special Projects Manager in the Systems, Security and Law Enforcement Department.

28.    Throughout her employment with LACMTA and LACMTA BOARD, approximately four and a half (4.5) years, Mrs. Loew maintained an exemplary employment record.

29.    However, Mrs. Loew was treated disparately, harassed, berated, lied to, humiliated, intimated, threatened because of her Caucasian race and because Washington, an African American, was furious that Loew had reported to her Supervisor Wiggins that Jon Gordon (Gordon) an African American and Washington's best friend's son was not qualified for the position, of which Washington directly appointed Gordon.  Mrs. Loew also reported to Washington, Peterson, and Wiggins that Gordon was engaged in Theft, Fraud, and engaged in

the personal use of Government Assets.

30.     The above conduct is consistent with LACMTA and LACMTA BOARD's notoriety for inhibiting and stepping on the civil rights of Caucasian and non-minority administrators when African American and minority administrators covet Caucasian and non-minority administrators' legitimately earned and obtained positions, seniority, pay, jobs or duties.

31.     LACMTA, acting in concert and combination, with the LACMTA BOARD and various individuals, has a history of harboring, and acting on, racial animus towards Caucasians and non-minority individuals.

32. In furtherance of the above racial animus, LACMTA, LACMTA BOARD and their officials, supervisors and agents – including Washington, Wiggins, Peterson, Wisdom, Kuehl, Barger, Hahn, Ridley-Thomas, and Solis –maintain a custom, policy and practice of: treating Caucasian and non-minority administrators disparately and less favorably than similarly situated African-American and minority administrators; subjecting Caucasian and non-minority administrators to hostility and harassment in the workplace based on their race; accelerating the promotion and advancement of African-American and minority administrators at the expense, and to the detriment, of Caucasian and non-minority administrators; instituting purported "Corrective Action" against Caucasian and non-minority administrators for conduct that is also engaged in by African-American and minority administrators but without implementation of Corrective Action and without fear of substantive discipline; declining, and refusing, to reasonably and properly investigate, and take remedial action for, "reverse discrimination" workplace complaints and reports by Caucasian and non-minority administrators; failing to reasonably investigate or remedy discriminatory and hostile work environments at LACMTA based on racial animus towards Caucasians and non-minorities; failing to reasonably or adequately educate or train employees, supervisors, managers, staff, and administrators in responding to, investigating, and remedying discriminatory and hostile work environments at LACMTA based on animus towards Caucasians and non-minorities; creating, tolerating, acquiesced in, supporting and furthering the disparate treatment and hostile work environment directed at LACMTA administrators because of their Caucasian and

non-minority race or ethnicity by the related actions and omissions of LACMTA, LACMTA BOARD and their officials with final decision-making authority.

32.     From the commencement of Ms. Loew's assumption of her duties as Special Projects Manager at LACMTA in September 2016 through the present, Ms. Loew was consistently rated Highly Effective,

34.     From the commencement of Ms. Loew's assumption of her duties as Special Projects Manager at LACMTA in September 2016 through December 2019, Mrs. Loew had had a spotless and pristine employment record with LACMTA, including the complete absence of any warnings, disciplines, suspensions, complaints, write-ups, grievances, charges or negative employment actions of any type.

35.     Friends of Washington including Gordon, Vilma Jones (Jones), Patricia Martin(P.Martin), Patrice McElroy (McElroy), Harold Martin (H.Martin), and Ashley Martin (A. Martin) who are African American were not required to go through the normal Human Resource and hiring practices of LACMTA, including qualifying for secretary pools, taking performance exams, being subject to interviews, having independent salary reviews or meeting minimum job qualifications, and but instead they are directly appointed to positions with noted pay. However, Loew, Caucasian and non-minority must go through all of the standard HR practices for hiring. There is a clear compensation discrepancy in my department based on race in violation of CA Labor law.

36.     Friends of Washington who are African American including but not limited to Jones, Gordon, Joyce Burrell Garcia (Garcia), Jackie Bobo Fabre (Fabre), P. Martin, H. Martin, Aston Greene (Greene) and A. Martin are given autonomy within the LACMTA.  African American are not held accountable for their job function, or for fail to produce work product consistent with deadlines and their job description. African American Employees are not required to meet HR policies including but not limited to timecard reporting, receiving bribes by contractors, and personal use of government vehicles. Loew, Caucasian and non-minority employees are held to all HR standards and work product accountability measures.

COMPLAINT FOR DAMAGES, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF

37.     Mrs. Loew was forced under duress to hire Gordon and Garcia both African American and neither of whom met qualifications for their positions However, Garcia and Gordon were African American and friends of Washington, Gordon and Garcia were not required to submit to the same hiring process as Loew, Caucasian, and non-minority employees of LACMTA.

38.     Specifically, Gordon was given permission by Washington to ignore management directives from Mrs. Loew, Caucasian and non-minority Managers. Mrs. Loew restricted Gordon's flex schedule consistent with departmental business needs and Human Resources Policies.  Upon hearing of Mrs. Loew's decision to restrict Gordon's flextime, Washington became irate and reversed Mrs. Loew's personnel decision without consulting Mrs. Loew. Washington only has a habit of reversing any management decisions of Mrs. Loew and other Caucasian and non-minority Managers

39.     In October of 2018 Washington launched an EEO investigation into the conduct of Mrs. Loew.  Washington made accusations that Mrs. Loew had created a hostile work environment for Jones. As an African American Employee Jones was not required by Washington, Peterson and Wisdom to go through the normal EEO process.  Washington in violation of LACMTA policy was allowed by Peterson to initiate EEO for an African American Employee against Mrs. Loew.

40.     In addition to Mrs. Loew, Washington also alleged the same charges against Wiggins an African American and Helen Valenzuela (Valenzuela) a non-minority Director at LACMTA.

41.     Washington at the initiation of his investigation revoked the management authority of both Caucasian and non-minority Managers, Loew and Valenzuela; however, Washington allowed Wigging the only African American charged in the investigation to maintain his management authority and staff.

42.     Washington had previously allowed Wiggins to keep his management authority and staff in 2017 when a non-minority LACMTA employee accused Wiggins soliciting her for sexual favors in exchange for a promotion and sexual harassment.

COMPLAINT FOR DAMAGES, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF

43.     The results of the investigation initiated by Washington exonerated Loew and showed that no findings were substantiated. Subsequently due to the fact that Mrs.Loew ran a department solely comprised of African America Employees, Washington and Peterson refused to reinstate Loew's Staff.

44.      In fact, all African American staff were withheld from both Mrs. Loew and Mrs. Valenzuela and following the conclusion of the investigation. Mrs. Valenzuela only had her Caucasian staff reinstated.

45.     Washington and Peterson refused to move forward Mrs. Loews promotion. During the same time Washington and Peterson promoted African American Employees.

46.     On June 5, 2019, Mrs. Loew requested that Wisdom and Peterson launch investigation into Washington's actions of creating a hostile work environment and discrimination.  Peterson noted that the African American employees of the agency will not be treated as Mrs. Loew had been treated and all African American Employees would be allowed to maintain their Management responsibilities and staff.

47.     Mrs. Loew attempted to work with Direct Supervisor Greene, an African American male to restore her staff following Washington's investigation.  Greene refused to reinstate Loew's staff, as Greene was furthering Washington's discrimination against Loew.

48.     On, June 7, 2019, Washington, held meeting of all Systems, Security and Law Enforcement personnel.  At that meeting, Washington publicly admonished and humiliated Mrs. Loew. Washington expressed that did not agree with the conclusions of Investigator Attorney Aisha Adam, that he was very disappointed in the managers who were investigated, and he believed that that Mrs. Loew was a racist.

49.     On June 7. 2019, Greene made a publicly regarding his commitment Phillip Washington after Phillip Washington crusade against Caucasian and non-minority LACMTA employees.

50.      When Mrs. Loew informed Wiggins of substandard work performance by Gordon, Jones and Garcia Wiggins told Loew that he (Wiggins) and Washington like to "give African Americans a chance, despite not meeting basic job qualifications or experience."

COMPLAINT FOR DAMAGES, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF

51.     On another occasion when Mrs. Loew informed Wiggins that Gordon, an African American was not fulfilling his job duties, Wiggins told Loew that the directive from Washington was to "be flexible with Gordon". When Loew asked, "What if Gordon doesn't do his work? what then?" Wiggins reiterated, "Phil (Washington)wants you to be flexible with Jon (Gordon)" Wiggins also warned Loew that Washington had a history of "TAKING THINGS INTO HIS OWN HANDS" and to be very careful.

52.     When Wiggins was approached with the substandard work and violations of Human Resources Policy by African Employees Wiggins accused Mrs. Loew of engaging in "girl drama".

53.     Fabre, an African American tried to withhold Mrs. Loew's job promotion disposing Mrs. Loew's Job/Promotion application.

54.     Fabre works to support African American Employees who are friends of Washington to secure employment for which they are not qualified. Fabre by aids only African Americans with their contracts in project management, funding lunches for only African American Employees and their meetings, sending African American employees to conferences outside of their work purview at the taxpayer expense. Fabre often refuses to pay Loew's and other Caucasian and non-minority Managers vender contractors, which in some cases has resulted in contractors threatening discontinuing services.

55.     Fabre under minds Mrs. Loew's work function and authority of Caucasian and Non-minority Employees. Fabre colludes with African American employees create false claim of racism and has Caucasian and non-minority employees investigated absent evidence.

56.     Fabre has made public statements "we need to take care of our own" meaning African American employees. Fabre's actions against Mrs. Loew have been consistent with her publicly made comments.

57.     Loew has repeatedly brought an evidence of discrimination to the LACMTA Leadership team, the LACMTA Board of Directors, and Inspector General of the LACMTA.

COMPLAINT FOR DAMAGES, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF

58.     Defendants' above conduct and omissions caused Loew significant damages and injuries in excess of $5,000,000, including economic loss, extreme emotional distress and damage to business reputation.

# Count I

**42 U.S.C. § 1983 – RACE DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE**

59.     Mrs. Loew incorporates herein her above allegations.

60.     The above actions by Defendants were taken under color of state law.

61.     Ms. Loew is a 37-year-old, Caucasian female, and a member of a protected class within the meaning of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution ("EPC").

62.     Beginning in December 2016, Mrs. Loew was subject to hostile, harsh and demeaning conducted directed at her because she is Caucasian, as described above, including, without limitation, retaliation for opposition to Defendants' continue maintenance of their racial animus toward, and racial discrimination against, Caucasian and non-minority Manager with LACMTA and LACMTA BOARD.

63.      The above conduct was based on Mrs. Loew's race.

64.     Defendants acted on their racial animus and, acting in combination, concert and conspiracy with LACMTA and the LACMTA Board of Directors and its members, inter alia.

65.     Defendants' disparate treatment of Mrs. Loew in comparison to other similarly situated African American or minority administrators is based on Defendants racial animus towards Caucasians and non-minorities and constitutes a deprivation of Mrs. Loew's right to equal protection of the law as guaranteed by the EPC.

66.     Defendants' deprivation of Ms. Loew's constitutional rights stems from Defendants' policies and customs that maintained, promoted, perpetuated, tolerated and allowed racial discrimination, including, but not limited to:

A.     Failing to have adequate training and supervision necessary to prevent racial discrimination toward Caucasian employees

B.     Individuals with final decision-making authority (i.e.policymakers), took actions that failed to, in any way, prevent or remediate racial discrimination against Caucasian employees; and

C.     Individuals in supervisory roles had a custom of tolerance or acquiescence for racial discrimination against Caucasian employees, some of whom permitted ongoing violations of Mrs. Loew's above-referenced rights.

67.     Washington, Peterson, Wisdom, Wiggins and Fabre above conduct directly participated in, and encouraged, the specific instances of racial discrimination that Ms. Loew suffered and/or they participated in the above by authorizing, approving, and knowingly acquiescing in the unconstitutional conduct of Ms. Loew's coworkers.

68.     In connection with the above, Washington, Peterson, Wisdom, Wiggins and Fabre were acting in their individual capacities and for their individual interests, under color of state law, as well as in their official capacities.

69.     Defendants' above conduct deprived Mrs. Loew of her constitutional rights, including equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution.

70.     As a direct and proximate result of Defendants' above-described acts, omissions and conduct, Ms. Loew sustained injuries and damages, including, but not limited to: lost wages and income, past and future; lost benefits, past and future; loss of job and career opportunities; loss of earning capacity; extreme emotional distress, humiliation and mortification; psychiatric and physiological injury, and permanent mental disturbance; loss of reputation and esteem in the community, damages to personal reputation, and damage to business reputation; loss of

enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue employment of choice.

**COUNT II**

**42 U.S.C. § 1983 – DUE PROCESS**

71.    Mrs. Loew incorporates herein her above allegations.

72.    Mrs. Loew enjoyed a constitutionally protected property interest in her job as Special Projects Manager at LACMTA.

73.    Mrs. Loew enjoyed a constitutionally protected liberty interest in pursuing current and future employment and maintaining her reputation and privacy.

74.    Mrs. Loew also enjoyed a constitutionally protected liberty interest in her privacy and reputation.

75.    At all times hereto, it was clearly established that violating Mrs. Loew's above rights and interests was constitutionally impermissible.

76.    Acting under color of law, Defendants promulgated and carried out the official policies, orders and directives described above intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of Mrs. Loew, including the fundamental right to due process arising out of the Fourteenth Amendment to the United States  Constitution.

77.    Defendants, acting under color of law and pursuant to their respective authorities as described above, treated Mrs. Loew with extreme hostility and cruelty,

78.    Between October 2018 and June 2019 Defendants and agents of Defendants publicly leveled the above-referenced representations and allegations against Mrs. Loew regarding her morality, private life and reputation, which stigmatized Mrs. Loew and severely damaged her opportunity for future employment.

79.    Defendants' representations and allegations were false.

COMPLAINT FOR DAMAGES, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF

80.    Defendants' representations and allegations humiliated and defamed Mrs. Loew in violation of her privacy and reputational liberty interests.

81.    Said representations and allegations were widely publicized.

82.    Mrs. Loew was not allowed to confront, much less cross examine, her Defendants nor the individuals under Defendants' control who made the above representations or allegations, or to have a third-party do so.

83.    Mrs. Loew was denied a prompt, thorough and impartial investigation of the above representations and allegations on several occasions.

84.    Mrs. Loew's work reputation was tarnished by Defendants and she was not afforded a meaningful name clearing hearing or opportunity.

85.    Defendants' actions invaded Mrs. Loew's constitutionally protected liberty and property interests in an arbitrary, capricious and irrational manner.

86.    Defendants acted with deliberate indifference to Mrs. Loew's race-based disparate treatment and Mrs. Loew's presumed and actual innocence.

87.    At all times hereto, Mrs. Loew had a clearly established the right to due process of law of which a reasonable public official would have known.

88.    Nevertheless, Mrs. Loew was treated with extreme hostility and cruelty, and was disciplined, suspended and sanctioned by Defendants, depriving Mrs. Loew of her property and liberty interests, without being afforded basic due process.

89.    Before depriving Mrs. Loew of her constitutionally protected property and liberty interests, Defendants did not conduct a hearing or investigation into the grounds for her discipline.

90.    Defendants' actions of depriving Mrs. Loew of her constitutionally protected property and liberty interests, without a hearing or investigation of the grounds for her discipline and, abridged her right to due process of law in violation of the Fourteenth Amendment to the United States Constitution.

91.    Defendants' actions invaded Ms. Loew's constitutionally protected liberty and property interests in an arbitrary, capricious and irrational manner.

92.    By promulgating and carrying out the policies, orders, and directives described above, Defendants unlawfully violated Ms. Loew's constitutional rights.

93.    As a direct and proximate result of Defendants' above described acts, omissions and conduct, Mrs. Loew has sustained injuries and damages including, but not limited to: lost wages and income, past and future; lost benefits, past and future; loss of job and career opportunities; loss of earning capacity; extreme emotional distress, humiliation and mortification; psychiatric and physiological injury, and permanent mental disturbance; loss of reputation and esteem in the community, damages to personal reputation, and damage to business reputation; loss of enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue employment of choice.

## Count III

### CIVIL CONSPIRACY

94.    Mrs. Loew incorporates herein her above allegations.

95.    Defendants illegally, maliciously, and wrongfully conspired and combined with one another with the intent to, and for the illegal purpose of intentionally, inter alia, depriving Mrs. Loew of her constitutional rights, interests and privileges, as secured by the Thirteenth and Fourteenth Amendments to the United States Constitution.

96.    Defendants acted furtherance of their racial animus, and racial discrimination, against Mrs. Loew because she is a Caucasian female, unlawfully depriving Ms. Loew of her rights, liberties and privileges which are protected by the United States Constitution.

97.    The above conspiracy and combination resulted in the illegal, unlawful, and/or tortious activity by Defendants, including the suspension of Mrs. Loew, and subjecting her to racial persecution, from her position as Special Projects Manager at LACMTA and, inter alia, depriving Mrs. Loew of her rights, liberties and privileges which are protected by the United States Constitution.

98.    Defendants, acting in concert and combination, inter alia, deprived Mrs. Loew of her rights to freedom of speech, freedom of association, freedom to petition and due process in violation of the First, Thirteenth and Fourteenth Amendments of the United States Constitution, as applied to the States and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

99.    The above actions by Defendants, in conspiracy and combination, also deprived Mrs. Loew of her constitutional rights and privileges under the Equal Protections Clause of the Fourteenth Amendment by, inter alia, acting irrationally, arbitrarily and with vindictiveness, singling Ms. Loew out for unfair treatment, acting out of seer malice in their treatment of Mrs. Loew, for reasons wholly unrelated to any legitimate state objective, and in refusing to provide equal protection of the law to Mrs. Loew.

100.   As a direct and proximate result of Defendants' above acts and violations of the United States Constitution, inter alia, in conspiracy and combination, Mrs. Loew sustained injuries and

damages, including, but not limited to: lost wages and income, past and future; lost benefits, past and future; loss of job and career opportunities; loss of earning capacity; extreme emotional distress, humiliation and mortification; psychiatric and physiological injury, and permanent mental disturbance; loss of reputation and esteem in the community, damages to personal reputation, and damage to business reputation; loss of enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue employment of choice.

COMPLAINT FOR DAMAGES, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF

WHEREFORE, Mrs. Loew respectfully requests that this Court enter a judgment against Defendants, providing the following relief:

A.    Awarding Mrs. Loew her actual, consequential and compensatory damages in excess of $5,000,000, including, without limitation, lost wages, front pay, backpay, lost benefits; emotional distress, mental distress, anguish, and humiliation; and damage to business reputation.

B.    Awarding Mrs. Loew punitive damages, attorney fees and costs;

C.    Awarding Mrs. Loew punitive damages pursuant to 42 U.S.C. § 1981(b);

D.    Awarding Mrs. Loew compensatory damages pursuant to 42 U.S.C. §1981(b);

E.    Entering an injunction restoring Mrs. Loew to the unfettered position she had with LACMTA and LACMTA BOARD, and restraining and enjoining Defendants from continuing their conduct and actions in violation of Ms. Loew's rights and the rights of other similarly situated LACMTA and LACMTA BOARD employees, including restraining and enjoining Defendants from their customs and policies that create and perpetuate the racially disparate work environment at LACMTA;

F.    Awarding Mrs. Loew any and all damages available federal or state common law, including without limitation, punitive damages, reasonable attorney fees, and any other costs of the action; and

G.    Awarding Mrs. Loew pre-judgment and post-judgment statutory interest.

COMPLAINT FOR DAMAGES, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF

Respectfully Submitted,

Jennifer Erin Loew

Plaintiff in Pro Per

February 26, 2020

COMPLAINT FOR DAMAGES, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF

- 20

DEMAND FOR JURY TRIAL


    NOW COMES Plaintiff, Jennifer Loew, Plaintiff in Pro Per and hereby demands a trial by jury of all the triable issues in the above matter.


                              Respectfully Submitted

                              Jennifer Erin Loew
                              Plaintiff in Pro Per
                              February 26, 2020

COMPLAINT FOR DAMAGES, JURY DEMAND, AND REQUEST FOR INJUNCTIVE RELIEF